Good afternoon, counsel. The case before us this afternoon is 24-2146, United States v. Aguilar. Counsel for appellant, if you would make your appearance and then you may proceed. Good afternoon, your honors. Nicholas Hart on behalf of appellant Kyle Aguilar. Mr. Aguilar was convicted following a jury trial of two counts of abusive sexual contact of a minor in Indian country for a single course of conduct. Those convictions present two issues which have been raised in this appeal. First, whether the convictions were multiplicitous in violation of the double jeopardy clause and second, whether those convictions were supported by sufficient evidence. To start with the double jeopardy clause, the primary argument that Mr. Aguilar has advanced is that when we look at the structure of the definitions, the plain language, when we look at the plain language of the definition section of chapter 109a, there is a structural difference between the definition of sexual act found in section 2246-2 and the definition of sexual contact which is what Mr. Aguilar was convicted of in section 2246-3. This structural difference must be given some meaning. Congress must have intended something in creating this structural difference and the only logical meaning that could be given to this structural difference is that it delineates the way the courses of conduct should be considered by this court in that including a single section or subsection needs to be given the meaning that it is its own course of conduct rather than the separate acts within it. Mr. Hart, it is quite true that there is a difference in structure between those two statutes but one of the things that occurs to me is when I look at 2L from the 8th Circuit, when I look at the 9th Circuit Yazzie decision, when I look at our own Garcia-Lemone decision in the footnote, all of them talk about the notion of the statute being framed in singular terms and what significance should attach to that and what we have here in section 6-3 or is it let's say 2246-3 is a situation in which you have intentional touching being phrased singularly. You also have these various body parts being phrased disjunctively and Garcia-Lemone pointed that out and so did I believe 2L as being signifying a single act or a separate act statute. So what do you do with that? So I do think that 2L and Garcia-Lemone are different from what we're asking the court to do in this case. First, 2L dealt with 2246-2 where we have that structural difference in addition to the singularity language that the court is talking about. So we do think that that difference there is you know shows what we're talking about but also in Garcia-Lemone what the court was dealing with was really the reverse is whether multiple carbon copies of the same offense can be charged as singular as a singular count. If anything, we believe that Garcia-Lemone and this court's application actually supports Mr. Aguilar's because what the court said in Garcia-Lemone is that nothing in the statutory text requires the government to charge separate counts for repeated conduct. In other words, the multiple so-called acts even multiple courses of conduct can be charged in a separate count without violating the constitution was the conclusion in Garcia-Lemone. Now here when we look at the singularity language, I don't think that it's enough that we could just look at that language alone and say that it has to be a separate act offense because it's not just that language alone. It's the fact that that language as it relates to section subsection 3 is phrased disjunctively. They're separate acts and drawing upon the ninth circuit decision in Yazzie, it talked about if congress had meant to criminalize an episode, it could have done that. It did not do that. What we have here is a separate body parts and we have set in their phrase disjunctively. Why shouldn't that have meaning? I think your honor if we look at the supreme court that dealt with this even recently in Pulsifer saying that we expect congress to speak clearly for everything that it means but we can't always expect that it will do so and that's why we look at all for all of these different clues. So I think the failure to I'm giving you clues and I'm asking you to tell me why those clues do not point in the direction of a separate act in particular the disjunctive point with which Garcia-Lemone pointed out which two else pointed out why doesn't that speak or bespeak the notion of a separate act offense? I don't think that the that the disjunctive part denotes a separate act offense. Surely congress you know could not have used the conjunctive here because its intent was never to say that every single body part needed to be touched at the same time. They could have could have gotten around that with the and slash or if they really wanted to. They could have potentially. Or it could have been pled it could have been pled to lead to a different result not pled it could have been drafted to lead to a different result and it wasn't. We just we think your honor that that that by putting all of the by putting the emphasis on the singularity and the disjunctive what 2ELK did with a separate statute is with a separate section I'm sorry not a separate statute with 6-2 is take away the would would take away the reading you know that more than one body part right could still remain a single violation of statute in or in in other words there is there's no dispute here I think that if the government charged a violation of section 22-46-3 as the touching of more than one body part and specifically did so that that would be an appropriate charge under the statute that's what Garcia-Lamon concluded but just because the disjunctive says that the separate could be a single violation doesn't also eliminate the the result that touching more than one party part simultaneously or in rapid succession could you know has to be or is appropriately a separate act violation simultaneously presents a slightly different problem but we don't have that so happily we don't need to decide it but touching sequentially I mean it strikes me that the the body parts described are are different in terms of likely seriousness that the victim would experience that is being touched on one of her body might be perceived more offensive or more invasive than another part I mean I'm not sure that the victim would have the same response depending on which part of her body was touched so in that regard it seems to make perfect sense that the court would view those as separate matters I'm not so sure your honor that you know a victim or even a jury during a trial would view the touching of any one of these separately certainly the touching of anyone is treated the exact same under the law so I don't know that there's a seriousness type analysis here I also think that delineated the in 2246 to what I thought were the more serious the more serious sexual conduct from 2246 three and that that's the seriousness delineation that the court should lean on if I could Mr. Hart I'm sorry I didn't mean to interrupt but if I can ask I I want to make sure I understood your point about Garcia Lamon are you saying that that it would not have been problematic in your view here if this had been charged as one count involving these two acts I mean drawing on the reasoning of Garcia Lamon that's correct your honor if we apply Garcia Lamon to this case and Mr. Aguilar was charged in one count instead of two then Garcia Lamon would say that that is appropriate listing both of the listing both these acts correct okay that's so let's consider that if that had been pled that way and said both of these acts of touching are being charged then we've got the problem what if one of those acts of touching is shown but not the other then is there an acquittal that's certainly what was argued uh during the directed verdict is that only one you can see why the government wouldn't want to charge that way I could see why the government may not want to charge that way but certainly I under Garcia Lamon this court has now said that that is appropriate right in charging a separate courses of conduct in a single count so the government may choose you know to charge the way they did in this case but we still believe that the manner in which it charged in this case is inappropriate because it is a single course of conduct but the government according to you the government has to pick and choose if they don't want to take the responsibility of proving all of them they have to pick and choose and hope that they pick the one body part that they can most strongly show was touched and that that body part picked will have the the jury to get a conviction uh you know that that could be one of the results of what the government should could have done and you can see why congress might not have drafted it to put that kind of a speculative anticipatory burden on the government but rather to allow the government some some flexibility as long as notice has been adequately provided for the defendant uh i i understand uh what you're saying your honor i still think uh that the meaning that the result right now is that if two elk is extended and 2246-2 is uh read the exact same way as 2246-3 then there's absolutely no meaning given to the separate delineations in 2246-2 as compared to 2246-3 and that's mr aguilar's primary argument is there has to be some purpose that congress listed out separate acts and separate subsections in one and did not in the other and we think the only logical purpose there is that it is a course of conduct offense uh if there are no more questions at this time around i would like to reserve the remaining time for uh okay council for the government please the court i'm james braun on behalf of the united states um and it it's okay with the court i'll address each of the defendants arguments in turn first the district court correctly ruled that the two counts charging aguilar with abuse of sexual contact are not multiplicitous aguilar argues that section 2244 is solely a course of conduct offense meaning that multiple acts of touching during a single incident are a single criminal offense but as the eighth circuit recently held in hollow hornbearer section 2244 defines a separate act offense accordingly each act of touching a separate body part listed in section 2246-3 is a distinct criminal violation may i ask a just for an analogy what if we had a different case here where the defendant had held the victim in in a custody someplace in a dungeon or something and and over the course of several days repeatedly raped her would they have to charge all those rapes as one crime or could they charge them as separate crimes even though the conduct was the same we wouldn't have to charge them either way necessarily under garcia limon that allows for some flexibility depending on the facts of the case the question is here is whether section 2244 is solely a course of conduct offense or a separate act offense so you would have the government would have no problem with charging each of those postulate rapes separately right that's right or as in garcia limon where the victim had a hard time differentiating exactly what happened on each occasion it was easier considering the nature of a child victim to charge a single charge for a continuing course of events or activity over a long period of time but here where we have discrete touchings of different body parts it's clear under section 2244 that you have separate criminal violations well i'm not you say discrete touchings i mean i i guess we don't know about that because i'm clear but it may just be that it wasn't really he didn't say now i'm going to touch this part of you now i'm going to touch that part of you it was just a kind of a course of conduct it was i i don't think it was very discreet i mean i don't know that i don't think the record establishes it but it what i gleaned from the record is that it was kind of just one fairly short conduct that involved touching of many things not exactly simultaneously but very connected with each other well we use distinct in terms of separate that he touched her breast he touched her vagina he touched her butt those were separate touchings and even if they were during the same incident they were separate and to that extent discreet she described several of those body parts could be touched simultaneously what if they were touched simultaneously i mean anus and vagina could be touched at the very same moment then what can you charge those separately perhaps not that that might be a tougher case because there if you're if you're applying the verb test and looking at the appropriate verb which is touching and that arguably would be a single touching of multiple body parts but here where you have separate touchings of separate body parts you have distinct crimes as judge judge ebell used the word earlier um sequential would you agree with that as fitting this context yes these were sequential touches she described it that way don't it that he started um by touching her her butt then her breasts and then her vagina you you referenced the eighth circuit's decision and um hollow bear hollow horn bear i think you described it i looked at your brief yeah i don't see any citation of that i mean is this i mean would you file a 28 j letter unless you've included in your brief and i missed it and i'm sorry your honor we filed a letter oh on that one did you really okay i'm sorry i missed that okay give us the site to that would you please so hollow horn bear is at 144 f fourth 1105 and and yes we did file a 28j letter and i apologize if the court doesn't have that in front of it um but there the court the the eighth circuit extended uh to elk to 2254 i'm sorry 2244 and held that the same reasoning uh from two elk applies to section 2244 so do you think we have three circuits now uh we have the eight well that was another eight circuit case so we still don't that didn't add an additional circuit because two elk is an eighth circuit as well right the significance of hollow elk which was a 2241c case to 2244 which is what we have here and to say the same reasoning applies so we have one circuit we have eight circuit going your way and arguably is it the ninth that also goes your way i can't remember yes the ninth and yazzy followed uh two elk with regard to 2241c no other circuits have weighed in on this no no but of course this court did cite those cases favorably in garcia limon and um and garcia limon involved both 2241c and 2244 and recognized that even though in that case it was appropriate to charge it as a course of conduct that it could also be charged um separately and that the case law recognizes the the propriety of that um in circumstance let me let me ask you the example was offered that let's assume that there had been uh the charging of these two touchings in the context of one count would you have would you have to be able to show beyond a reasonable doubt that both touchings occur i mean in other words if the jury were to find that one touching uh was not that they couldn't find beyond a reasonable doubt that one touching occurred uh with the requisite mens rea would would that count fail or could that count still survive we believe the count would still survive but then as garcia limon recognized it would be a unanimity issue and and there you'd probably need a um a special verdict form where the jury would have to show that they were unanimously agreeing on which act and so if they couldn't agree that say the touching the breast occurred they they could unanimously agree that the touching the vagina occurred and and there with a special verdict you would have a unanimous verdict on one of those acts and um and i think garcia limon would allow for that um but here the facts where the the victim was able to testify about separate touchings um how it started with the massage then he touched her butt then her breasts and then her vagina she described separate touchings and that allowed appropriately for it to be charged as separate and distinct offenses and and that is not a multiplicity problem then under two elk hollow horn bear and garcia limon what about let's shift a little bit to the sufficiency of the evidence and unless there's something burning that you still wanted to say on the on the question of uh double jeopardy well the only thing that i would i would follow up with the multiplicity is is to follow up on judge ebell's point about how congress could have worded the statute differently and they could have worded differently to say any sexual contact and then under um under the case law there might be some ambiguity um but we don't have that here here the statute refers singularly to sexual contact and then it defines sexual contact in the disjunctive and as hollow horn bear says reading those statutes together 22 46 3 and 22 44 uh evidence is congress's intent to treat each separate touching as a distinct offense and with that um yes we can move on to sufficiency please of course sure and no and i appreciate that uh that point uh on the sufficiency front um what what should we make of on the intent uh question what should we make of liana sandoval's testimony and and can that be cabined uh in light of the fact that her testimony related to the second incident not the one that was at play in in counts two and three right we argue that in our answer brief and the defense doesn't challenge the propriety of that that testimony was admitted without limitation um and so although it wasn't argued that way to the jury that evidence was before the jury and and juries are free to consider evidence even of acquitted conduct when they're determining guilt on each count um and that that was evidence that was properly before them and it could have been admissible in a separate trial even if the counts had been severed uh with and indeed we and just sort of uh by virtue of capitalization do uh what i that uh at least arguably is being is inextricably intertwined i mean or would you view it differently in other words this would be part of the overall um course of conduct of and i don't mean it as it relates to uh the uh double jeopardy issue we were talking about earlier but i'm talking about course of conduct of the defendant uh in other words it would not necessarily be 404b evidence but would be evidence that one would view otherwise do you have a different view arguably it could be considered inextricably intertwined it could also have been admissible under um either 413 i believe it would be 413 or 414 um okay um involving sexual assault cases um yeah so it would have been independently admissible with um so there you know our position is that there is no um there wouldn't be a problem with considering that evidence of the defendant's intent and and again the defense hasn't in their reply hasn't taken issue with that okay and i and i understand that and so how far does that evidence get you i mean you have um uh sandoval saying in a separate incident that she it was her opinion that he was gratifying himself what does that get you as it relates to the incident that's at issue and two and three it it adds to the equation but it's it's not we're not arguing it's sufficient in and of itself and in fact even without that evidence we believe um there is sufficient evidence of intent when you look at the circumstances you know this court's decision in norman t allows for an intent to be inferred from looking at the circumstances and here when you look at the circumstances where the defendant starts by uh giving the victim a massage and then moves to touching more intimate parts uh sequentially the that evidence is that it wasn't uh inadvertent that it was intentional and there's no non-sexual reason for him to be doing that he's not a father giving a bath to an infant child or a soccer coach slapping a player on the rear end after a goal or a doctor giving a medical examination he's an uncle who laid down uninvited next to his uh teenage niece there was there was simply no non-sexual reason when he was in those places when he entered the room had she locked it and he was able to unlock the room or was it just shut she testified i believe that she had locked the door and did he have a key to unlock it how did he get in there i don't believe the uh the record establishes how he unlocked it but it was established that she had locked it right all right thank you um and so given those circumstances where there's no non-sexual reason for him to be touching her in this manner the way he touched her evidence is that it wasn't inadvertent um it was intentional it was one body part after the other um that's strong evidence of his intent um when he's touching her that it's not a non-sexual inadvertent touching now do you actually do you is it your position then that we could ignore sandoval's testimony and that the touching alone under the circumstances is enough evidence to sustain the verdict yes yes i mean to the extent that's a difficult question that the court doesn't need to go there um because of the circumstances in addition to the fact that aguilar chose to and his testimony could be used against him by the jury he didn't simply deny that he had touched doe in a sexual manner as he seems to imply in his reply brief and he didn't testify that he inadvertently touched her breasts and vagina instead he testified that he didn't touch those body parts at all he was specifically asked have you ever touched those vagina either directly or through the clothes and he answered no he was asked specifically have you ever touched those breasts either directly or through the clothes he answered no that's a page 587 of the transcript so what does that what does that do for you i'm sorry judge cars now go ahead i mean what is i what's the import of that i mean why do you think that's helpful well the import of that is that doe testified that he did touch her he testified that he didn't the jury could reasonably conclude that his testimony was false and the reason he would give false testimony about that is because he knew that his touching was unlawful he knew it was inappropriate otherwise there'd be no reason for him to lie about it if it was inadvertent he would have said so instead he said he didn't do it at all the jury clearly didn't believe that and by not believing that they can believe the opposite and the opposite is that he did it to gratify himself then that's drawing from principles similar to our jane case where the defendant testified as to a lack of knowledge and we said that could be used the jury could have considered that if they didn't believe her to show that she did grab the knowledge right and so when you add those those together the the circumstances along with the defendant's testimony that the jury could disbelieve and and in fact believe the opposite that is more than sufficient to show the defendant's intent and i see that i'm out of time thank you thank you count that the court affirmed mr art please thank you your honor um to uh briefly correct just one thing about the record wanted uh talk about the door being locked the testimony in the transcript and this is from the of uh jane doe of uh of the alleged victim is that these were doors that locked without a key that are common in households where they could be locked and unlocked from both sides right so even though the door she testified was locked she also testified that it's very easy even from the outside to still open the door uh when it's locked because all it requires is that you turn uh the middle portion of the doorknob now as far as the sufficiency arguments um put forward put forward by the government there's just too much speculation i think it's exactly what um judge berzon uh touched on in decraying is that what we're dealing with is that the only way that the jury could have gotten to the intent of mr aguilar in any of these alleged touchings is through speculation the testimony um of jane doe was that these touchings were so fast that she does not uh so fast she just immediately jumped up and that she left the room the testimony is that mr aguilar didn't say anything to her and she doesn't remember having any conversation that he didn't linger on any body parts there's no testimony about rubbing or any of the other things that this court normally looks to as um to determine whether or not a touching in and of itself has some type of indicia of intent and uh don't you have a problem though because your client said unequivocally that he didn't do it it at trial so when he testifies i didn't do it and there's an alternative story told by the victim that he did do it um i mean isn't it hard for him to come and say well it's speculation about why i might have done it um you know i didn't touch her for that long and i didn't rub her i just touched her i mean and and then when you tack on to that the idea that the jury could hold his own testimony against him that they didn't believe i mean doesn't that create a problem for you i don't think it creates a problem your honor because the testimony that he didn't do it doesn't eliminate the possibility or the inference and the evidence that it could have been mistaken and that he didn't know right he said he didn't do it i mean if if it was mistaken he said i didn't mean to that's what the testimony would have been there i didn't do it is directly contradicting the victim's testimony the testimony was also that he was heavily drinking that he was intoxicated there's all this testimony that the government put in um about the situation i see them at a time uh please continue um so there there is all of this testimony that the court puts that the government put in to kind of create the atmosphere and that doesn't eliminate the inference that um that a jury could have made or even that the that it may be a mistaken or unintentional um touching so his statement that he didn't do it if i'm under following you with your reference to intoxication that the jury could have found that he just is mistaken about whether he touched her because he was drunk and therefore the question then is still existent as to whether he touched her to gratify himself do i understand that chain of logic yes your honor the chain of logic is that um saying that he didn't do it alone does not eliminate him from being able to say that a look at the evidence by the court after a conviction that it's still that it's not sufficient because there wasn't enough to get this across without speculation right that that's what we're saying this isn't a case what we think like john anything else from my colleagues no not me all right case is submitted thank you for your arguments thank you your honors thank you your honors